**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| NATHANIEL MCCRAY, | ) | |
| | ) | |
| *Petitioner*, | ) | No. 23 C 3768 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| CHARLES TRUITT, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| *Respondent*. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Nathaniel McCray, a prisoner in custody of Stateville Correctional Center, petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 21). For the following reasons, the Court denies McCray's Petition [21] and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

## BACKGROUND

After a trial in the Circuit Court of Cook County, a jury found McCray guilty of first-degree murder and aggravated kidnapping. (Dkt. 38-11 at 270–71, Exhibit K). He was subsequently sentenced to a cumulative sentence of 75 years—50 years' imprisonment for first degree murder and 25 years' imprisonment for aggravated kidnapping. (Dkt. 38-5 ¶ 5, Exhibit E, Second Postconviction Appeal Decision). McCray's codefendant Jennifer Reeves was also convicted in a separate proceeding. (*Id.* ¶ 5 n.1).

### I.     Factual Background

In deciding a § 2254 petition, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) (citing 28 U.S.C. § 2254(e)(1)). The facts set forth here are drawn primarily from the

Illinois Appellate Court's decision on the merits, as it is the last state court to adjudicate McCray's claims, and, as noted, from the underlying record.

On the morning of March 14, 2006, police discovered the partially clothed body of Roger Hunz in a Chicago alleyway. (Dkt. 38-5 ¶¶ 7, 25). Hunz's body had over 200 visible injuries and duct tape around the neck, but the absence of blood at the scene, besides on his body and clothes, suggested he was killed elsewhere. (*Id.*)

Police learned from the Hunz's brother that Hunz had spent the previous evening with Christina Noojin and her live-in boyfriend Mitchell Alicea. (*Id.* ¶ 7). Hunz, Noojin, and Alicea were at Noojin's residence when Hunz agreed to drive Reeves and Noojin to buy cocaine. (*Id.* ¶ 8). At Reeves's direction, Hunz parked in an alley, where McCray entered the car, accused them of setting him up, and began attacking them. (*Id.* ¶ 9) McCray sprayed Reeves and Noojin with a substance, struck Reeves, and choked Hunz with a cord before tying him up and placing a pillowcase over his head. (*Id.*) McCray then carried Hunz to Reeves's car, (*Id.*)

Reeves instructed Noojin to ride with him in Hunz's car while the two drove to Hunz's apartment in Lansing, Illinois, to retrieve money that Noojin had heard about. (*Id.* ¶ 10). Noojin had heard that Hunz had $65,000 from a recent sale of a house. At the apartment, Reeves used Hunz's keys to enter, but Reeves and Noojin were unable to find any money. (*Id.* ¶ 11). Reeves and Noojin then returned to McCray's residence in Chicago. (*Id.* ¶ 12).

Upon returning to McCray's residence, McCray, now with his brother, led the others to the garage, where Noojin saw Hunz tied up, bloody, and unresponsive. (*Id.* ¶¶ 12–13). The group returned to the basement, and McCray remarked that he had done all this for nothing. (*Id.* ¶ 14). McCray and his brother then drove to Hunz's apartment again in Reeves's car, while Reeves and Noojin took Hunz's vehicle. (*Id.*)

At a red light, McCray and Reeves argued from their cars. (*Id.* ¶ 16). A police officer stopped Reeves's car in a gas station parking lot, where surveillance footage showed McCray buying gas for both vehicles. (*Id.* ¶¶ 14–16). The officer released Reeves with a warning after being dispatched to another call. (*Id.* ¶ 17).

The group proceeded to ransack Hunz's apartment a second time but again found no money. (*Id.* ¶ 18). The group took a few items and returned to McCray's home. (*Id.*) Noojin overheard Reeves telling McCray to mutilate Hunz's body to avoid identification. (*Id.*) Noojin then took Hunz's car and fled until it ran out of gas. (*Id.* ¶ 19). Noojin abandoned the car, discarded the keys, and called her parents. (*Id.*)

On March 14, 2006, the next day, Noojin told Alicea what had happened. (*Id.*) Noojin stayed at a friend's house that night, but Reeves soon arrived and demanded Hunz's car keys. (*Id.* ¶ 20). When Noojin said she didn't have them, Reeves warned Noojin that she did not know who she was dealing with. (*Id.*) Noojin saw McCray waiting in Reeves's SUV outside. (*Id.*) The following morning of March 15, 2006, Noojin and Alicea reported the kidnapping to police and led officers to Hunz's car and the discarded keys. (*Id.* ¶ 21). Later that day, Noojin and Alicea both identified McCray in surveillance footage. (*Id.*) On March 19, 2006, Noojin identified McCray in a police lineup. (*Id.*)

A search of McCray's residence revealed red stains in the garage, including stains on a wooden door jamb and the concrete floor, consistent with the look of dried blood. DNA testing confirmed the blood belonged to Hunz. (*Id.* ¶¶ 32, 34).

## II.    Procedural History

### 1.    Jury Trial

After the selection of the jury venire, McCray raised a *Batson* challenge. (Dkt. 38-8 at 150, Exhibit H). The final jury included four Black jurors. Both alternates were also Black. (*Id.* at 153). The prosecution did not exhaust its peremptory strikes but did use them on three Black prospective jurors, two individuals of Middle Eastern descent, and two white individuals. (*Id.* at 150–52). Regarding the Black jurors who were struck, the state trial court stated: "the two male blacks that the State did excuse, one thing I could note that came up in voir dire, they had criminal interactions with the police where they had been arrested . . . and that all came up during voir dire." (*Id.* at 153). After considering McCray's request for a *Batson* hearing, the state trial court denied it. (*Id.* at 152–53).

The trial concluded and following the conclusion of closing arguments, the state trial court provided jury instructions. (Dkt. 38-11). Relevant here are two instructions. First, the state trial court instructed the jury on the principle of accountability, stating that "[a] person is legally responsible for the conduct of another person when either before or during the commission of an offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid the other person in the planning or commission of an offense. (*Id.* at 252).

The state trial court also instructed that the jury should find McCray guilty of first-degree murder "if in performing the acts which caused the death, he intended to kill or do great bodily harm to that individual, or he knew that such acts created strong probability of death or great bodily harm to that individual, or he was committing the offense of aggravated kidnapping." (*Id.* at 254). Over the defense's objection, (*id.* at 161–62), the state trial court provided a general verdict form

for first-degree murder, which did not require the jury to specify any theory on which it could convict McCray (*Id.* at 256–57).

After deliberation, the jury convicted McCray of first-degree murder and aggravated kidnapping. (*Id.* at 270–71). Following the verdict, the state trial court noted that "the Government asked that the piece of wood that had been received in evidence . . . be given to the jury. This was done over the objection of the defense." (*Id.* at 273). Although not all defense counsel were present when the exhibit was sent to the jury, the state trial court clarified, after some back and forth, that Mr. Florey, one of McCray's attorneys, made a timely objection at the time. (*Id.* at 274). Regardless, the state trial court provided the exhibit to the jury because the exhibit was in evidence and relevant. (*Id.*)The state trial court sentenced McCray to consecutive terms of 50 years for murder and 25 years for aggravated kidnapping. (Dkt. 38-5 ¶ 5).

### 2. Direct Appeal

McCray directly appealed his trial court conviction, raising two arguments. (Dkt. 38-2 at 31–44, Exhibit B, Briefs for Direct Appeal). He contended that:(1) the trial court erred in granting the State's motion in limine to admit testimony by Noojin from Reeves, who he was unable to cross-examine, violating the right of confrontation granted by the Sixth Amendment; and (2) the evidence at trial was insufficient for the jury to convict him beyond a reasonable doubt for aggravated kidnapping and first-degree murder. (*Id.*) The Appellate Court rejected both arguments, affirming his conviction. (Dkt. 38-1, Exhibit A, Direct Appeal Decision). McCray declined to file a direct petition for leave to appeal with the Illinois Supreme Court.

### Postconviction Petitions

On May 3, 2011, McCray filed a *pro se* petition for postconviction relief in the Circuit Court of Cook County. (Dkt. 38-12, Exhibit L, Pro Se Postconviction Petition). The trial court

summarily dismissed the petition, which the Appellate Court reversed on appeal, concluding that "[t]he trial court erred when it denied defendant McCray's request for separate verdict forms, and the error provided a meritorious issue for appeal." (Dkt. 38-3 at 11, Exhibit C, First Postconviction Appeal Decision).

Upon remand, McCray argued, as pertinent here, the following:

(1) The trial court abused its discretion and denied a fair trial and due process when it provided a general verdict form for first degree murder. (Dkt. 38-12 at 6–12; Dkt 38-13 at 8–9, Exhibit M, Supplemental Pro Se Postconviction Filings).

(2) The trial court erred admitting improper motive evidence. (Dkt. 38-12 at 12–15).

(3) The State violated *Batson v. Kentucky* in its use of peremptory strikes. (*Id.* at 15–17).

(4) The trial court abused its discretion when it improperly allowed the wooden door jamb to be sent to the jury during deliberations and did so holding an improper *ex parte* communication. (*Id.* at 21–24; Dkt. 38-13 at 10–20).

(5) Trial counsel was ineffective for failing to know the law and challenge the use of a general verdict form. (Dkt. 38-12 at 24–29; Dkt. 38-13 at 24–35).

(6) Appellate counsel was ineffective for not raising on appeal the above claims, in addition to failing to adequately support a claim that the trial court erred in sending the wooden door jamb exhibit to the jury during deliberation. (Dkt. 38-12 at 29–36; Dkt. 38-13 at 35–47).

(7) He was unlawfully arrested in violation of the Fourth Amendment. (Dkt. 38-13 at 93–100).

The State then filed a motion to dismiss the postconviction petition. (Dkt. 38-14, Exhibit N, MTD Postconviction Petition). The trial court granted that motion in part, but also granted relief

on McCray's general verdict claim and vacated his aggravated kidnapping conviction and related 25-year sentence. (Dkt. 38-15, Exhibit O, Hearing on MTD Postconviction Petition; *see also* Dkt. 38-16, Exhibit P, Amended Judgment).

McCray appealed the motion to dismiss, raising the following relevant claims:

(1) The trial court evidenced bias when it improperly allowed the wooden door jamb to be sent to the jury during deliberations after an *ex parte* communication. (Dkt. 38-6 at 51–56, Exhibit F, Briefs for Second Postconviction Appeal Decision).

(2) Appellate counsel was ineffective for failing to adequately support a claim that the trial court erred in sending the wooden door jamb exhibit to the jury during deliberation on appeal. (*Id.* at 57–62).

(3) Trial counsel was ineffective for failing to challenge his unlawful arrest in violation of the Fourth Amendment, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 65–70).

(4) Trial counsel was ineffective for failing to object to the State's motive evidence, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 75–77).

(5) Trial counsel was ineffective for failing to object to the jury instruction on accountability, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 78–83).

(6) Appellate counsel was ineffective for failing to raise a *Batson* claim on appeal. (*Id.* at 83–85).

(7) Appellate counsel was ineffective for failing to challenge the trial court's use of a general verdict form on appeal. (*Id.* at 85–86).

The Appellate Court affirmed the judgment denying postconviction relief. (Dkt. 38-5). McCray then filed a petition for leave to appeal to the Supreme Court of Illinois. (Dkt. 38-7, Exhibit G, PLA and Denial Order). McCray asserted various claims, most relevant here being:

(1) Trial counsel was ineffective for failing to challenge his unlawful arrest in violation of the Fourth Amendment, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 4–8).

(2) Trial counsel was ineffective for failing to challenge the trial court's use of a general verdict form, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 8–10).

(3) The trial court exercised bias by partaking in *ex parte* communications during jury deliberations that resulted in the jury receiving a wooden door jamb exhibit. (*Id.* at 14–16).

(4) Appellate counsel was ineffective for failing to adequately support a claim that the trial court erred in sending the wooden door jamb exhibit to the jury during deliberation. (*Id.* at 16–17).

(5) Trial counsel was ineffective for failing to object to the jury instruction on accountability, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 18–19).

(6) Appellate counsel was ineffective for failing to raise a *Batson* claim on appeal. (*Id.* at 19–20).

(7) Trial counsel was ineffective for failing to object to the State's motive evidence, and appellate counsel was ineffective for failing to raise this issue on appeal. (*Id.* at 20–21).

On January 25, 2023, the Supreme Court of Illinois denied his petition for leave to appeal. (*Id.* at 1). McCray did not file certiorari with the Supreme Court of the United States.

### 3. Habeas Petition

After the Illinois Supreme Court denied his petition for leave to appeal, McCray filed a timely *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 on June 14, 2023, which is presently before the court.[1] (Dkt. 21).

## STANDARD OF REVIEW

### I. AEDPA

Federal habeas corpus petitions by state prisoners are governed by 28 U.S.C. § 2254, which directs the Court to review the decisions "of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2254 "respects the authority and ability of state courts and their dedication to the protection of constitutional rights" and "imposes important limitations on the power of federal courts to overturn the[ir] judgments." *Shoop v. Hill*, 586 U.S. 45, 48 (2019). Accordingly, under AEDPA, a federal court may not grant habeas unless the state court's adjudication was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an

---

[1] Pursuant to 28 U.S.C. § 2244(d)(1), a state prisoner must file a habeas corpus petition within one year of the latest of four possible dates, including "the date on which the judgment became final by . . . the expiration of the time for seeking such review." For purposes of AEDPA, McCray's conviction became final on April 25, 2023—the date on which the ninety-day period to file a petition for a writ of certiorari in the U.S. Supreme Court expired following the Illinois Supreme Court's denial of his Petition for Leave to Appeal on January 25, 2023. *See* U.S. Sup. Ct. R. 13.1 (providing that a petition must be filed "within 90 days after entry of the judgment"); *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002) (holding that the statute of limitations begins to run the day after the ninety-day certiorari period expires). McCray filed his federal habeas petition on September 6, 2023—well within the one-year limitations period, which would have expired on April 26, 2024.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 203 n. 20 (2011).

An "unreasonable application" under 28 U.S.C. § 2254(d)(1) occurs when a state court (1) identifies the applicable legal principle but unreasonably applies it to the facts of the case or (2) unreasonably refuses to extend a principle to a context in which it should apply. *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). While AEDPA does not require blind submission, it is nonetheless "a deferential and difficult to meet standard." *Jewell v. Boughton*, 90 F.4th 1199, 1203 (7th Cir. 2024) (citation modified); *see also Harrington* v. *Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). It is not enough for a state court to be "merely wrong; 'even clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Instead, the petitioner must show the state court applied the law "in an objectively unreasonable manner . . . so lacking in justification that there was an error . . . beyond any possibility for fairminded [sic] disagreement." *Id*. at 419–20 (citation omitted).

## II.     *Strickland* Standard for Ineffective Assistance of Counsel Claims

While AEDPA sets a deferential baseline, alleging ineffective assistance of counsel requires the Court to impose a second, independent layer of deference. *See Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017) (where a petitioner seeks habeas relief due to the ineffective assistance of counsel, "we must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). Deference for defense attorneys imposed on a claim of ineffective assistance is standardized by the two-prong test set forth in *Strickland v. Washington*. 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 286 (2000) ("The proper standard for evaluating [an

ineffective-assistance claim] is that enunciated in *Strickland*."). Courts begin the *Strickland* inquiry "with the strong presumption that counsel was *not* ineffective." *Meyers v. Gomez*, 50 F.4th 628, 645 (7th Cir. 2022) (citing *Kimmelman*, 477 U.S. at 381; *Strickland*, 466 U.S. at 689) (emphasis in original).

First, the petitioner must show "that his counsel's performance was deficient because it 'fell below an objective standard of reasonableness.'" *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 688). Rather than merely measuring conduct against best practices or the most common custom, the Court must determine whether the petitioner identified acts or omissions, that were outside the wide range of professionally competent assistance in light of all the circumstances. *Harrington*, 562 U.S. at 105; *Strickland*, 466 U.S. at 690.

Petitioner must also prove that the deficient performance caused prejudice—specifically, that there was "a reasonable probability that . . . the result of the proceeding would have been different" had the counsel's errors not occurred. *Id.* (quoting *Strickland*, 466 U.S. at 694). This two-prong standard applies equally to claims concerning appellant counsel. *Makiel*, 782 F.3d at 897 (citing *Robbins*, 528 U.S. at 285).

**2. Procedural Default and Exhaustion**

Before the Court may consider the merits under AEDPA or *Strickland*, the petitioner must first satisfy the exhaustion requirement of § 2254. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1), (c)). This means giving state courts the first opportunity to address and correct potential violations, which must be done "at each level of state court review: in his initial post-conviction petition before the trial court, in his appeal to the Appellate Court,

and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

"For that opportunity to be meaningful, the petitioner must fairly present . . . his constitutional claims." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). This requires addressing "both the controlling law and the operative facts in a manner such that 'the state court was sufficiently alerted to the federal constitutional nature of the issue.'" *Hicks*, 871 F.3d at 530 (quoting *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013)).

If a petitioner fails to meet this requirement, however, and the opportunity to do so has passed, the reviewing federal court is precluded from reaching the merits of the claim via the procedural default doctrine. *Perruquet*, 390 F.3d at 514 (citing *Boerckel*, 526 U.S. at 853–54). "Procedural default can also occur if the state court rejects a federal claim based on a state procedural rule 'that is both independent of the federal question and adequate to support the judgment.'" *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (citations omitted).

The procedural default doctrine, however, is not dispositive to bar federal relief; the merits of the claims can still be reviewed only if "[ (1) ] the petitioner can demonstrate both cause for and prejudice stemming from that default . . . or [ (2) ] he can establish that the denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citations omitted). To establish a miscarriage of justice, "the petitioner must show that he is actually innocent of the offense for which he was convicted," meaning no reasonable juror would have found him guilty of the crime had the error by the state court not occurred. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)).

With these principles in mind, the Court now turns to McCray's petition.

**DISCUSSION**

McCray's § 2254 *pro se* petition asserts thirteen grounds for relief: (1) He was unlawfully arrested in violation of the Fourth Amendment, (Dkt. 21 at 6–7, 10–13); (2) trial counsel was ineffective for failing to challenge his unlawful arrest with a motion to suppress, (*id.* at 7, 14–16); (3) appellate counsel was ineffective for failing to challenge the trial attorney's decision not to raise a Fourth Amendment violation, (*id.* at 7, 17); (4) he was denied equal protection of the law by the prosecutor's exercise of peremptory strikes, which violated *Batson*, (*id.* at 8, 18–19); (5) appellate counsel was ineffective for failing to raise a *Batson* claim on appeal, (*id.* at 20–21); (6) the trial court exercised bias by holding improper *ex parte* communications during jury deliberations that resulted in the jury receiving a wooden door jamb exhibit, (*id.* at 22–26); (7) the trial court's use of a general verdict form for first degree murder denied petitioner a fair trial, (*id.* at 27–31); (8) trial counsel was ineffective for failing to challenge the trial court's use of a general verdict form, (*id.* at 33), (9) trial counsel was ineffective for failing to understand and articulate the sentencing consequences of using a general verdict form, (*id.* at 34–36); (10) appellate counsel was ineffective for failing to challenge the trial court's use of a general verdict form on appeal, and also the trial counsel's ineffectiveness on this ground, (*id.* at 37–38); (11) the trial court abused its discretion by sending the door jamb back to the jury during deliberations, (*id.* at 39–42); (12) the trial court abused its discretion by admitting motive evidence from Noojin, thus violating due process, (*id.* at 43–44); and (13) the trial court erred in providing an accountability jury instruction, (*id.* at 47–49).

As discussed in greater detail below, none of these claims warrant federal habeas relief. In summary, claim one is non-cognizable. Claims two, three, four, five, six, and twelve are denied on

their merits. Claims seven through ten are moot. Claims eleven and thirteen are procedurally defaulted.

## I.    Claim One—Fourth Amendment

McCray first alleges he was unlawfully arrested in violation of the Fourth Amendment when he was arrested pursuant to an investigative alert rather than a warrant from a neutral magistrate. This Court need not reach the merits as it is non-cognizable on federal habeas review.

While the government is correct to point out that merely "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues" is not sufficient to preserve that underlying claim because it is "a claim separate and independent of those issues," *Lewis*, 390 F.3d at 1026; *see also McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018) (holding that where petitioner only alleged appellate counsel's ineffectiveness for failing to raise trial counsel's error, the underlying trial counsel claim was procedurally defaulted as a separate and unexhausted claim), the ultimate inquiry is still whether the petitioner argued "both the controlling law and the operative facts in a manner such that 'the state court was sufficiently alerted,'" *Hicks*, 871 F.3d at 530 (quoting *McDowell*, 737 F.3d at 482). Thus, even where a claim is presented within the framework of ineffective assistance of counsel, "if the state resolves a claim on the merits, the petitioner's presentation must have been sufficient to alert the state court to the nature of the claim." *Malone v. Walls*, 358 F.3d 744, 756 (7th Cir. 2008) (finding no procedural default under *Lewis*, despite the claim at issue being argued under ineffective assistance of counsel, because the appellate court adjudicated the underlying claim on its merits and the petitioner sufficiently presented the controlling law and operative facts).

Beyond citing to *Lewis*, the government does not articulate how McCray's filings were insufficient to alert the state courts to the substance of his Fourth Amendment claim. He clearly

raised the Fourth Amendment claim in his post-conviction petition before the trial court. (*See* Dkt. 38-13 at 87–100). While he did not present the issue under a separate subheading in either his appeal to the Appellate Court or in his PLA to the Illinois Supreme Court, McCray nonetheless presented the underlying constitutional issue with ample controlling law and operative facts at each level. (*See* Dkt. 38-6 at 65–70; Dkt. 38-7 at 4–8). He thoroughly detailed facts to allege an unlawful arrest in both briefs, cited a variety of Fourth Amendment case law, and specified his Fourth Amendment right in his PLA. (*Id.*) These are precisely the kind of relevant factors courts look to when determining whether a claim was fairly presented. *See Sweeney*, 361 F.3d at 332.

This conclusion aligns with the well-established principle that pro se petitions are to be construed liberally. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014) (citing various cases from the Seventh Circuit and U.S. Supreme Court) ("We have repeatedly emphasized that pro se petitions are to be construed liberally, and should be held to standards less stringent than formal pleadings drafted by attorneys."). To find procedural default here based solely on the lack of a separate subheading would elevate form over substance and ignore the sufficiency of McCray's pleadings.

Still, this conclusion does not allow this Court to reach its merits because it is barred by *Stone v. Powell*, 428 U.S. 465 (1976). There, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. For a petitioner to prove the absence of full and fair litigation and allow the reviewing court to reach the merits of the claim, it must be determined "first whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim," and then whether "the presentation of the claim

15

in question was in fact frustrated by a failure of that mechanism." *United States ex rel. Bolstick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993). For example, "*Stone* would not block habeas review if the judge had his mind closed to the necessity of a hearing, or was bribed . . . or in some other obvious way subverted the hearing." *Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003). But the focus is not on "whether the judge got the decision right." *Id.*

Here, McCray never filed a motion to suppress evidence or quash his arrest on Fourth Amendment grounds. His failure to raise the issue does not establish that the state system lacked an opportunity for full and fair litigation because he otherwise could have. *U.S. ex rel. Maxey v. Morris*, 591 F.2d 386, 388 (7th Cir. 1979) ("We do not believe that Stone v. Powell can be avoided by the simple act . . . of not raising constitutional objections until a collateral attack is mounted on an adverse judgment."); *see also U.S. ex rel. Anderson v. Hardy*, 799 F. Supp. 2d 816, 825 (N.D. Ill. 2011) (holding the Fourth Amendment claim was "not cognizable on federal habeas review" because the petitioner's "failure to raise [the] claim in state court does not undermine the conclusion that he had a full and fair opportunity"). McCray cannot thereby credibly argue that "the state trial court had closed its mind to the necessity of a hearing," (Dkt. 43 ¶¶ 10, 12), when no case for its necessity was initially made because of "their own fault." *Maxey*, 591 F.2d at 388. Rather, the appropriate vehicle for any possible relief on this issue seems to be a Sixth Amendment challenge for failure to make that claim—not a stand-alone Fourth Amendment claim—which McCray makes. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (declining to extend *Stone* to bar a Sixth Amendment claim that "is based principally on a defense counsel's failure to litigate a Fourth Amendment claim"). The Court turns to that claim now.

## II.     Claim Two and Three—Ineffective Assistance of Trial and Appellate Counsel for Fourth Amendment Issue

McCray's second claim asserts trial counsel was ineffective for failing to file a motion to suppress evidence obtained from an unconstitutional arrest. This Court denies the claim on its merits because McCray did not meet the showing that the Appellate Court's adjudication was an unreasonable application of federal law pursuant to § 2254(d)(1).

The Appellate Court found that "even if [McCray] was illegally arrested pursuant to an investigative alert, because the other evidence of guilty was overwhelming, the admission of evidence derived from defendant's constituted harmless error." (Dkt. 38-5 ¶ 96). McCray contends his unlawful arrest tainted two pieces of evidence: "Christina's identification of him in a physical lineup, and the evidence recovered during the search warrant executed for his garage." (*Id.* ¶ 99). The court agreed that Christina's identification of him came from his arrest, but refused to extend this conclusion to the search warrant because the complaint did not reference the arrest or Christina's identification. (*Id.*) Regardless, both pieces of information would have inevitably been discovered—Noojin already identified him on surveillance, and would have likely identified him and the garage where she viewed Hunz in his deteriorating state. *See Nix v. Williams*, 467 U.S. 431, 444–50 (1984) (holding that evidence is admissible under the inevitable discovery doctrine if the government proves by a preponderance of the evin dence that it would have been discovered through lawful means regardless of police misconduct).

This "overwhelming evidence of guilt," in addition to "the detailed eyewitness testimony of Christina . . . which was corroborated by Mitchell's testimony, [and] the state of the victim's apartment following the search for money" makes it likely that any violation was harmless error. (*Id.* ¶ 100). Under the deferential AEDPA standard, it would be hard to contend that this conclusion from the Appellate Court is "so lacking in justification that [it] was an error . . . beyond any

17

possibility for fairminded [sic] disagreement" necessary under the AEDPA standard. *Woodall*, 572 U.S. at 419–20 (citation omitted). Accordingly, this claim denies McCray's second claim.

Consequently, McCray's third claim—that appellate counsel was ineffective for failing to challenge the trial attorney's decision not to raise a Fourth Amendment violation—must fall with it. Because this Court has found McCray's trial-level ineffective assistance claim meritless, he cannot establish "a reasonable probability that . . . the result of the proceeding would have been different" had appellate counsel raised the argument, as required per the prejudice prong *Strickland*. 466 U.S. at 694; *see, e.g., Warren v. Baenen*, 712 F.3d 1090, 1105–06 (7th Cir. 2013) (holding that appellate counsel was not unconstitutionally deficient for failing to raise meritless claim and "[i]t is axiomatic that [petitioner] was not prejudiced"); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Accordingly, McCray's petition cannot be granted on these claims.

### III.     Claim Four—*Batson* Violation

In his fourth claim, McCray alleges that the prosecutor's exercise of peremptory strikes against prospective Black jurors required a *Batson* hearing. He contends that the trial court erroneously denied the hearing because it improperly considered the race of seated jurors in assessing whether a prima facie showing had been made, which is irrelevant to the inquiry, and thereby violated his rights under the Equal Protection Clause. This claim is denied on its merits.

As a preliminary matter, this Court rejects the government's contention that this claim is procedurally defaulted under *Lewis*. McCray raised the *Batson* issue independently in his post-conviction petition before the trial court. (*See* Dkt. 38-12 at 15–17). At issue, however, is the fact that he did not present it under a separate subheading in either his appeal to the Illinois Appellate

18

Court or in his PLA to the Illinois Supreme Court. Even so, McCray continued to press the *Batson* issue. Relevant to this Court's consideration, he clearly detailed the alleged improper use of peremptory strikes, explained how the district court erred, provided a thorough review of *Batson* and supplemental federal cases, and specified his right to equal protection under the law, which *Batson* concerns, in his PLA. *See Sweeney*, 361 F.3d at 332; (Dkt. 38-6 at 83–85; Dkt. 38-7 at 19–20).

The Appellate Court's opinion supports this conclusion. It expressly acknowledged the *Batson* claim, stating: "According to defendant, the trial court erred when it 'considered facts totally irrelevant to the *Batson* inquiry[]' when it considered the race of the seated members of the jury as a factor." (Dkt. 38-5 ¶ 115). The court then thoroughly reviewed *Batson* and determined that the trial court's consideration of the jury's racial composition, which was the alleged underlying claim, was constitutionally permissible. (*Id.* ¶¶ 115-19). The Court therefore declines to find the claim procedurally defaulted and proceeds to evaluate it under AEDPA's deferential standard. S*ee Malone*, 358 F.3d 756–57.

The Supreme Court in *Batson* held using peremptory challenges to strike jurors solely on the account of their race offends the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The Court established a three-step procedure to determine whether a violation occurred: first, the burden is on the defendant to establish a prima facie case by showing the totality of the relevant facts give rise to an inference of discriminatory purpose, *id.* at 93–95; if established, the burden shifts to government to provide a race-neutral explanation for the challenging strike, *id.* at 97; then, the court weighs the evidence to determine whether the proposed explanation is credible or merely a pretext for purposeful discrimination, *id.* at 98.

McCray's claim focuses on the first step. The trial court concluded the defendant failed to make a prima facie case after reviewing all relevant factors. (Dkt. 38-8 at 152 ("[T]o suggest the number of black people on the jury and the way the challenges were used and to say that it was racial manipulation, I find farfetched, not accurate, not based on the jury selection that took place.")). This was determined even though the bar at this stage "is low, requiring only circumstances raising a suspicion that discrimination occurred" rather than establishing that "it is more likely than not that the challenges were used to discriminate." *United States v. Stephens*, 421 F.3d 503, 512 (7th Cir. 2005) (citing *Johnson v. California*, 545 U.S. 162 (2005)).

Despite this low bar, the trial court found no such inference, noting that: four members of the jury were Black, and eight were not; both alternates were Black; the government still had peremptory challenges to use against potential Black alternates, but chose not to; and two Blacks that were excused both had criminal interactions with the police, resulting in arrests. (Dkt. 38-5 at 41).

McCray argues the trial court misapplied *Batson* in two ways. First, he contends that the trial court improperly relied on the racial makeup of the seated to deny his prima facie case. Courts must consider "all relevant circumstances," *Batson* 476 U.S. at 96, "including the final make-up of the jury." *McCain v. Gramley*, 96 F.3d 288, 292 (7th Cir. 1996) (citing *Batson*, 476 U.S. at 97) (denying an inference of discriminatory intent for the prima facie case after considering that "the final jury consisted of ten whites and two blacks"); *see also, e.g., Franklin v. Sims*, 538 F.3d 661, 666 (7th Cir. 2008) (finding overrepresentation of African-Americans on the jury to be a factor "widely recognized as appropriate and important considerations at *Batson*'s first step"). While racial makeup alone cannot be dispositive to deny a prima facie case, *U.S. v. Cruse*, 805 F.3d 795, 809 (7th Cir. 2015), this Court agrees with the Appellate Court's determination that the trial court

20

properly considered it alongside other relevant factors to draw its conclusion. (*See* Dkt. 38-8 at 150–53).

Second, McCray contends the court erred by giving race-neutral reasons for the strikes instead of requiring the prosecutor to do so. (Dkt. 43 ¶ 41). But the trial court expressly noted that the reasons, such as prior arrests, arose during voir dire, (Dkt. 38-8 at 153), and this context is relevant at step one of the *Batson* framework. *See Batson*, 476 U.S. at 97 (noting that "questions and statements" during voir dire are part of the totality of circumstances to consider). Because the court found no prima facie showing, the burden never shifted, and the prosecutor was not required to offer an explanation. Accordingly, the Appellate Court correctly used *Strickland* as "the clearly established Federal law" and reasonably concluded that that McCray did not establish the prejudice prong from a lackluster underlying claim, (Dkt. 38-8 ¶ 119), thereby precluding barring relief under § 2254(d).

## IV. Claim Five—Ineffective Assistance of Appellate Counsel for *Batson* Issue

Because the underlying *Batson* claim fails on its merits, the Illinois Appellate Court was correct in rejecting McCray's claim of ineffective assistance of appellate counsel for failing to raise the *Batson* issue. (*See* Dkt. 38-5 ¶¶ 113–19). The court correctly used *Strickland* as "the clearly established Federal law" for ineffective assistance of counsel claims, and the conclusion that McCray did not establish the prejudice prong, (*Id.* ¶ 119), was not "contrary to, or involved an unreasonable application of" that law, as required by § 2254(d), because the underlying claim lacked merit. *See Warren*, 712 F.3d at 1105–06 (7th Cir. 2013). Accordingly, this claim does not warrant habeas relief.

## V.     Claim Six—*Ex Parte* Communication

For McCray's sixth claim, he contends that the trial court held an improper *ex parte* hearing by holding a discussion outside the presence of defense counsel before sending an exhibit, a door jam, to the jury during deliberations. The Court finds no basis for habeas relief on its merits.

The Illinois Appellate Court firmly concluded that "[t]he record . . . contains no evidence of *ex parte* communications or improper contracts by the trial judge." (Dkt. 38-5 ¶ 75). It was clear to the court that the judge "explained that one of defendant's three attorneys was present for this discussion and stated his objection." (*Id.*; Dkt. 38-11 at 274 ("Mr. Florey did make a timely objection at the time.")).

McCray has not overcome the presumption of the state court's factual determinations. *See Miller-El*, 537 U.S. at 324 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.") (citing § 2254(e)(1)). His assertion that an evidentiary hearing is needed to resolve whether counsel was present during the discussion, (Dkt. 43 ¶ 51), does not entitle him to one or convince this Court to do so. *Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000) (noting that § 2254(e)(1) "does not require findings to be based on evidentiary hearings, especially when "the state court's ruling is supported by the record").

McCray does claim, however, that an affidavit marked "Ground 6, Exhibit A" demonstrates that the alleged present attorney was in fact absent when the exhibit was sent to the jury; but while said to be "attached and incorporated [t]herein by reference," the affidavit was not included. (Dkt. 21 at 23). Without that affidavit or other competent evidence rebutting the state court's determination, the presumption of correctness remains intact. Accordingly, the state court's factual conclusion that defense counsel was present is supported by the record. This Court therefore finds that the Appellate Court's decision was not "based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Relief on this claim is denied.

## VI.     Claims Seven, Eight, Nine, and Ten—General Verdict Form

McCray alleges the use of a general verdict form for first degree murder denied him a fair trial (Claim Seven), trial counsel was ineffective for failing to properly object to this and understand and articulate the sentencing consequences of it (Claim Eight and Nine), and appellate counsel was ineffective for failing to challenge the use of it and trial counsel's ineffectiveness on the issue (Claim Ten). All these claims are moot following the vacatur of McCray's aggravated kidnapping conviction and 25-year. (*See* Dkt. 38-16).

Under Article III of the Constitution, federal courts may adjudicate only live controversies. The relevant question for mootness on appeal is "not whether we may return parties to the status quo ante, but rather, whether it is possible to 'fashion *some* form of meaningful relief' to the appellant in the event he prevails on the merits." *Brown v. Vanihel*, 7 F.4th 666, 670 (7th Cir. 2021).  Here, the trial court has already vacated McCray's aggravated kidnapping conviction and 25-year sentence—the very relief these claims target—so there is "no meaningful relief" this Court could provide. *Id.*; *see also, e.g., U.S. ex rel. Brunt v. Winters*, No. 03 C 3302, 2004 WL 2005826, at *3 (N.D. Ill. Aug. 13, 2004) (denying federal habeas claim as moot where the Illinois Appellate Court had already vacated the challenged sentence and conviction); *Morgan v. Page*, No. 97 C 4771, 1998 WL 919710, at *9–10 (N.D. Ill. Dec. 30, 1998) (holding four claims moot where the United States Supreme Court already vacated the defendant's related death sentence). Moreover, the Illinois Appellate Court reached the same conclusion when considering whether counsel rendered ineffective assistance in connection with the vacated conviction. (*See* Dkt. 38-5 ¶ 94).

Because the conviction and sentence underlying claims seven through ten no longer exist, the Court finds that these claims are moot and declines to address them further.[2]

## VII. Claims Eleven and Thirteen—Door Jamb To The Deliberating Jury and Accountability Jury Instruction

McCray alleges that the trial court erred in sending the door jamb to the deliberating jury (Claim Eleven) and in providing an accountability jury instruction (Claim Thirteen). Both claims are procedurally defaulted on the ground that the Appellate Court rejected it "based on a state procedural rule 'that is both independent of the federal question and adequate to support the judgment.'" *Clemons*, 845 F.3d at 819 (citations omitted).

Specifically, the Appellate Court cited Illinois Supreme Court Rule 341(e)(7), which requires that each point raised on appeal be supported by argument and citation to relevant authority, or else be deemed waived. (Dkt. 38-5 ¶ 111). This rule qualifies as an independent and adequate state ground for procedural default. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground."); *see also, e.g., U.S. ex rel. Hindi v. Warden of McHenry County Jail*, 82 F. Supp. 2d 879, 884 (N.D. Ill. 2000) (holding several claims defaulted where petitioner failed to cite relevant authority as required by Rule 341(e)(7)). In citing this rule, the Appellate Court expressly found the accountability jury instruction claim (Claim Thirteen) was "waived for failure to cite relevant authority." (Dkt. 38-5 ¶ 111). The court reached the same conclusion as to the door jamb claim (Claim Eleven), noting McCray had failed to provide "any

---

[2] McCray contends that respondent's mootness argument is underdeveloped without any supporting legal authority and therefore waived. But "[b]ecause a moot action does not satisfy the case or controversy requirement of Article III of the Constitution, the mootness claim is a nonwaivable question of subject matter jurisdiction." *S.-Suburban Hous. Ctr. v. Greater Suburban Bd. of Realtors*, 935 F.2d 868, 880 n. 12 (7th Cir. 1991) (citation modified).

relevant legal authority or citation to the trial court record to persuade [the] court that his claim had merit." (Id. ¶¶ 90–91). Accordingly, both claims are defaulted.

## VIII.   Claim Twelve—Motive Evidence

The final claim that this Court will evaluate is McCray's twelfth claim, asserting that the trial court abused its discretion by admitting motive evidence from Noojin, thus violating due process. This Court denies the claim on its merits.

The government again argues that the claim is procedurally defaulted because it was presented to the state courts through an ineffective assistance claim framework, but this Court proceeds to its merits on the same basis as the other claims—McCray still provided ample controlling law and operative facts in those petitions to alert the state court, evidenced by the Appellate Court's thorough analysis of the underlying claim. *See* Hicks, 871 F.3d at 530 (quoting *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013)); (*id.* ¶¶ 102–09).

Proceeding to its merits, however, this Court finds insufficient grounds for relief pursuant to § 2254(d). The Illinois Appellate Court concluded that the motive evidence was properly admitted, even without direct evidence that McCray knew the victim or his financial situation. (Dkt. 38-5 ¶¶ 104–08). The court explained that while motive is not an element of murder, evidence suggesting motive is relevant and admissible if it tends to make the defendant's likelihood of guilt more probable. (*Id.* ¶ 105). It found that McCray's belief that the victim had money was inferable from the surrounding evidence, including his coordination with Reeves, who was aware of the victim's finances, and his own statements that he didn't hurt Hunz for nothing after not getting the money. (*Id.*) Accordingly, the court concluded the underlying claim lacked merit. (*Id.* ¶ 108).

Given the Appellate Court's reasoned analysis, the state court's decision was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded [sic]

disagreement" necessary under the AEDPA standard. *Woodall*, 572 U.S. at 419–20 (citation omitted). Accordingly, the claim is denied on its merits.

## **CONCLUSION**

For the reasons above, McCray's petition for a writ of habeas corpus under 28 U.S.C. § 2254 [21] is denied. The Court also declines to issue a certificate of appealability because McCray failed to substantially show the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of McCray's petition. *See* 28 U.S.C. § 2253(c)(2); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Virginia M. Kendall
United States District Judge

Date: September 2, 2025